| | |
|---|---|
| DISTRICT COURT, PUEBLO COUNTY, COLORADO<br>501 N. Elizabeth St.<br>Pueblo, CO 81003 | DATE FILED: January 31, 2024 3:44 PM<br>FILING ID: 69A02959C3393<br>CASE NUMBER: 2024CV30060 |
| Plaintiff(s): GILBERT GARCIA<br><br>v.<br><br>Defendant(s): COLORADO DEPARTMENT OF CORRECTIONS, and<br><br>MOSES "ANDRE" STANCIL, in his Official Capacity | ▲  COURT USE ONLY  ▲ |
| Casey J. Leier, #45155<br>Leventhal Lewis<br>Kuhn Taylor Swan, PC<br>3773 Cherry Creek N. Dr., Ste. 710<br>Denver, CO 80209<br>Ph: (720) 699-3000<br>Fax: (866) 515-8628 | Case Number:<br><br><br><br><br>Division          Courtroom |
| COMPLAINT AND JURY DEMAND ||

Plaintiff Gilbert Garcia ("Mr. Garcia"), by and through counsel, Casey J. Leier of Leventhal Lewis Kuhn Taylor Swan PC, submits this Complaint and Jury Demand against Defendants Colorado Department of Corrections and Moses "Andre" Stancil, in his official capacity (collectively "Defendants") as follows:

## I.     INTRODUCTION

1.     This is an action for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-402.

2.     Mr. Garcia was subjected to discriminatory harassment on the basis of sex and presumed sexual orientation.

**EXHIBIT 1**

3.  Mr. Garcia is an employee of the Colorado Department of Corrections ("DOC") in the Correctional Support Trades Supervisor ("CSTS") I series.

## II.  JURISDICTION AND VENUE

4.  This action is brought pursuant to 42 U.S.C. § 2000e et seq. and C.R.S. § 24-34-401 et seq., to redress unlawful discrimination based upon sex and presumed sexual orientation.

5.  Jurisdiction is conferred by the Colorado Constitution Article VI, Section IX.

6.  The unlawful actions alleged herein were committed in Pueblo County in the state of Colorado.

7.  Venue is proper in the District Court of Pueblo County under C.R.S. § 24-34-306.

8.  Mr. Garcia timely filed Charges of Discrimination with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission prior to filing this Complaint.

9.  Mr. Garcia received a Right to Sue letter from the CCRD and timely filed this Complaint within the 90-day time period.

10. Mr. Garcia has not yet received a Right to Sue letter from the EEOC but has requested one.

## III.  PARTIES

11. Mr. Garcia is a citizen of Colorado. He is employed with the Colorado Department of Corrections.

12. The Colorado Department of Corrections is a political agency, a Department of the Executive Branch. Mr. Stancil is the Executive Director of the Department and is sued in his Official Capacity as the Public Officer representing the CDOC. The Department is Plaintiff's employer within the meaning of the relevant statutes. Defendant's central office is located at 1250 Academy Park Loop, Colorado Springs, Colorado, 80910.

## IV.    GENERAL ALLEGATIONS

13.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

14.    Mr. Garcia has worked for the Department of Corrections since December 1, 1997.

15.    He has been working for the Department for approximately 26 years.

16.    During the time period relevant herein, he served at the La Vista Correctional Facility in Pueblo, Colorado.

17.    He served one and one-half years at Four Mile Correctional Facility and otherwise has served at the Pueblo Campus.

18.    Mr. Garcia belongs to protected classes based on his sex (male) and sexual orientation (straight male treated or perceived as gay).

19.    Beginning in or about August 2020, Mr. Garcia was subjected to discriminatory harassment.

20.    The harassment focused on jokes and statements about sex and sexual orientation.

21.    The harassment began when Lt. Greg Perry was transferred by the Department from a different facility to oversee the area where Mr. Garcia worked.

22.    By information and belief, Lt. Perry was transferred to LVCF as a Sergeant (Correctional Officer II) and was later promoted to Lieutenant (Correctional Officer III).

23.    Lt. Perry, along with co-worker Sgt. Jose Montoya, and, in one incident, Lt. Meese, would regularly joke that Mr. Garcia was gay and effeminate.

24.    Lt. Perry changed Mr. Garcia's computer wallpaper to an image of a male exotic dancer from the movie "Magic Mike."

25.    Lt. Perry and Sgt. Montoya made jokes that Mr. Garcia enjoyed performing oral

3

sex on men.

26. Sgt. Montoya and Lt. Meese would make comments about Mr. Garcia's backside.

27. In or around September of 2021 Perry made comments about Mr. Garcia's genitals.

28. On November 2, 2021, Montoya stated that Mr. Garcia liked "pretty women that sound like a man" and that he was considered as a "petite woman."

29. On or around November 2, 2021, Mr. Garcia made a complaint to Support Services Manager, Major McQueen, about the harassment. Afterward, he was moved to another facility for a short while, but this was only temporary and did not resolve the harassment.

30. Further, Mr. Garcia objected to the transfer as a retaliatory rather than remedial measure. His alleged harassers were not transferred and were not disciplined for their conduct.

31. On or about December 12, 2021, Mr. Garcia was called "a transgender" by Montoya.

32. On or about December 30, 2021, Perry logged onto Mr. Garcia's computer and removed another "Magic Mike" image he had placed as a screensaver.

33. On or about January 3, 2022, Mr. Garcia was speaking with Officer Roque Sandoval about a fishing trip, and Mr. Garcia said something about how wide or big fish he had caught was, and Perry and Montoya overheard the conversation and proceeded to tease Mr. Garcia about him "liking girth."

34. On or about January 10, 2022, Mr. Garcia was having lunch when Montoya approached and said "you can tell when Gil leaves the bathroom because it smells like a woman in there."

35. Later that same day, Montoya and Perry were speaking to each other and stated that Mr. Garcia "don't know what an orgasm is."

36. Other inappropriate comments included that he "like[s] it up the a—" and comments about what porn Mr. Garcia must watch; comments about how he ate bananas, and how he "like them big."

37. On or around April 21, 2022, Perry made a middle finger with a rubber glove and affixed it to Mr. Garcia's chair and when it was complete, Montoya and Perry wanted Mr. Garcia to sit on it.

38. Mr. Garcia alleges that these types of comments were the type of sexual, and inappropriate comments he heard regularly.

39. Mr. Garcia did not participate in the jokes nor indicate that he welcomed them.

40. Mr. Garcia further alleges that on or about July 29, 2022, Perry lost his temper and screamed at Mr. Garcia that he would "not do [his] fucking job" in the presence of inmates, and by doing so, he put Mr. Garcia in a dangerous position in which the inmates might think that Mr. Garcia's supervisor does not support him nor will protect him.

41. On or about August 1, 2022, Perry made the comments, "you need to do your fucking job" when he put Mr. Garcia in positions where he knew the facility was short-staffed.

42. Perry spoke to Mr. Garcia in a manner he did not speak to other employees; one one occasion, Perry screamed at Mr. Garcia to bring in a hose reel.

43. On or about August 2, 2022, Perry engaged in verbal attacks on Mr. Garcia, which led him to contact his doctor.

44. On or about August 3, 2022, Perry insinuated that Mr. Garcia was not paying attention or watching the offenders and said "strike one" to make a point that Mr. Garcia was not watching them and to indicate that Mr. Garcia was being considered for discipline. At the time, Mr. Garcia was in fact processing multiple duties, including conducting an offender count and

performing maintenance duties.

45. Perry frequently bullied Mr. Garcia and engaged in sexual harassment. Comments such as those mentioned herein were regularly made to him.

46. Despite his complaints to stop the behavior, the Defendants did nothing to stop it.

47. After time, the comments began to affect Mr. Garcia's mental health, to the point that he took FMLA leave for anxiety and stress for the month of September 2022. In addition to his mental health, which has suffered, Mr. Garcia has experienced physical symptoms including headaches and nosebleeds. He was on an FML period from August 4, 2022 through September, 2022.

48. Mr. Garcia at first did not know what to do to address the unwanted conduct, because one of the harassers, Lt. Perry, was his supervisor, and he did not have a particularly close relationship with Lt. Perry's supervisor. He was also concerned that complaining of the behavior would only result in further derogatory comments from his co-workers.

49. The harassment began in or about August 2020.

50. Mr. Garcia made his initial complaint in or about September of 2020.

51. He made another complaint on November 2, 2021.

52. He made another complaint on August 3, 2022.

53. When Mr. Garcia initially made his complaint known in 2020 and 2021, it was not taken seriously. No investigation was initiated.

54. The Office of Inspector General did not at that time conduct an investigation.

55. Mr. Garcia made his complaints known to Major McQueen in face-to-face meetings on at least two occasions.

56. Major McQueen became irritated when Mr. Garcia spoke to him about the

6

harassment and bullying.

57. Mr. Garcia was not given the CDOC's anti-discrimination and anti-harassment policy or the official complaint form as required by the policy. Therefore, Mr. Garcia's complaint was originally only verbal.

58. It was not until August 3, 2022 that Mr. Garcia was advised to file a written complaint for the Office of Inspector General.

59. Rather than moving his alleged harassers to a different location or placing them on administrative leave, as is the regular practice of CDOC, it instead moved Mr. Garcia to a different facility, San Carlos, in retaliation for making his complaint.

60. Rather than offer any support or remedial action to Mr. Garcia, the CDOC investigator blamed Mr. Garcia for not filing a written report earlier than August 2022.

61. By information and belief, Lt. Perry was not issued any disciplinary action.

62. By information and belief, Lt. Montoya was not issued any disciplinary action.

63. Due to the response to his verbal complaint, Mr. Garcia felt further complaints would be futile.

64. When Mr. Garcia returned to La Vista Correctional, the harassment did not end but continued.

65. From September 2020 to at least April 2022, Perry and Montoya engaged in regular or frequent sexual harassment of Mr. Garcia.

66. By August 2022, Mr. Garcia's health, both physical and mental, deteriorated due to the harassment.

67. It became necessary for Mr. Garcia to take a leave of absence pursuant to the Family Medical Leave Act ("FMLA").

68. On August 3, 2022, before taking his leave, Mr. Garcia submitted a report indicating that he was being sexually harassed.

69. The complaint was referred to Major McQueen.

70. The Defendants have asserted that McQueen issued a corrective action to Lt. Perry, but to Plaintiff's knowledge, nothing else was done.

71. Mr. Garcia was never advised of any outcome(s) of investigation(s) of his complaints of harassment.

72. Under the State Personnel System, a corrective action is a warning or advisory to an employee, but is not considered formal disciplinary action and does not affect an employee's pay, status, or tenure.

73. The Defendants have, to date, never produced any investigation report or investigative findings to Plaintiff.

74. By information and belief, when asked by Major McQueen, Perry admitted to using inappropriate language towards Plaintiff and to addressing Plaintiff in an unprofessional manner in front of staff and inmates.

75. On October 7, 2022, Mr. Garcia filed Charges of Discrimination with the Colorado Civil Rights Division ("CCRD") and the Equal Opportunity Commission ("EEOC"), alleging claims of discriminatory harassment and retaliation.

76. On August 11, 2023, the CCRD issued a Letter of Determination.

77. The CCRD's letter made a finding that there was Probable Cause that discriminatory harassment occurred.

78. It concluded that it did not have sufficient information to make a finding of whether retaliation occurred.

79. The CCRD concluded that the Defendants violated C.R.S. § 24-34-402.

80. The EEOC has not yet concluded its investigation. Plaintiff has requested a Right to Sue letter from the EEOC.

## V.    STATEMENT OF CLAIMS
### COUNT I

Violation of Colorado Anti-Discrimination Act, § 24-34-402
Discriminatory Harassment Based on Sex and/or Perception or Treatment of Sexual Orientation

81. Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

82. Mr. Garcia is male and is a member of a protected class based on his sex and sexual orientation.

83. Mr. Garcia is a straight male who was treated differently in that he was subjected to derogatory statements and actions related to his sexual orientation.

84. These statements and actions were based on homophobia and sex-based stereotypes.

85. The statements were unwanted and unwelcome, and Mr. Garcia advised the alleged harassers that the conduct was unwelcome.

86. Other employees in similar positions to Mr. Garcia were not subjected to the same adverse terms and conditions.

87. The statements were subjectively unreasonable to Mr. Garcia, and he made his position known. The statements were also objectively unreasonable and outside the bounds of reasonable workplace communications.

88. The conduct of the alleged harassers occurred on a regular basis and was not a single event.

89. The conduct had the purpose or effect of creating a hostile, intimidating, or offensive work environment, so much so that Mr. Garcia required a leave of absence of a month to obtain respite from the offensive comments.

90. Defendants failed to take reasonable care to prevent the harassment.

91. Defendants either directly or by and through agents, discriminated against Mr. Garcia on the basis of his sex, and caused injuries, damages, and losses.

92. As a consequence of Defendant's violation of CADA, Mr. Garcia has sustained significant economic and consequential damages, including wage and benefit loss, retirement income loss, reputational injury, and emotional upset and anxiety.

## **COUNT II**

Violation of Title VII, 42 U.S.C. § 2000e
Hostile Work Environment Based on Sex and/or Perception or Treatment of Sexual Orientation

93. Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

94. Mr. Garcia, under Title VII, was discriminated against and harassed based on his sex and/or sexual orientation by a supervisor and co-workers.

95. The discriminatory statements, threats, and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Mr. Garcia, were viewed as subjectively hostile and abusive by Mr. Garcia, and would be viewed as objectively hostie and abusive to a reasonable person.

96. Mr. Garcia complained to supervisors, and Defendants had actual or constructive knowledge of the ongoing discrimination and harassment.

97. Defendants failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Mr. Garcia.

98. Defendants discriminated against Mr. Garcia on the basis of sex and sexual orientation in violation of Title VII, 42 U.S.C. § 2000e.

## COUNT III

Colorado Anti-Discrimination Act, § 24-34-402
Retaliation for Engaging in Protected Activity

99. Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

100. Mr. Garcia engaged in protected opposition to unlawful discrimination when he complained to his supervisor of harassment in or about November 2021.

101. Mr. Garcia was subjected to adverse treatment that would dissuade a reasonable person from engaging in protected activity when he was involuntarily transferred to San Carlos Facility, and when he was verbally reprimanded by his supervisors in front of offenders for his performance.

102. There is a causal connection between Mr. Garcia's protected activity and the adverse treatment against Mr. Garcia.

103. The Defendants retaliated against Mr. Garcia for engaging in protected activity in violation of Title VII, 42 U.S.C. § 2000e.

## COUNT IV

Title VII, 42 U.S.C. § 2000e
Retaliation for Engaging in Protected Activity

104. Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

105. Mr. Garcia engaged in protected activity when he complained about discrimination and harassment based on sex and sexual orientation.

106. In retaliation for Mr. Garcia's complaints, Defendants reassigned him to a different facility.

107. In retaliation for Mr. Garcia's complaints, Defendants verbally disparaged Mr. Garcia's work and implied that he would be disciplined or fired.

108. There was a causal connection between Mr. Garcia's complaints and the adverse actions taken against Mr. Garcia.

109. The retaliation endured by Mr. Garcia would dissuade a reasonable employee from making complaints of discrimination and harassment.

110. The Defendants retaliated against Mr. Garcia for engaging in protected activity in violation of Title VII, 42 U.S.C. § 2000e.

## COUNT V

### Intentional Infliction of Emotional Distress

111. Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

112. Defendants' harassing behavior and failure to properly address the harassment, by failing to investigate, facilitate, or otherwise provide remedy to Mr. Garcia to ensure that the Defendants' workplace was free from harassment was extreme and outrageous.

113. The Defendants knew or should have known that the conduct of the alleged harassers was unreasonable, unwanted, and should have been addressed.

114. The Defendants knew or should have known that the harassment could or would have the effect of creating an extreme or outrageous working environment.

115. The conduct intentionally or recklessly caused Mr. Garcia severe emotional distress.

116. As a result of the harassment and the failure to remediate the extreme and outrageous conduct, Mr. Garcia has suffered damages including loss of wages due to sick time, loss of benefits, emotional distress, physical pain and suffering, loss of future wages, loss of future benefits, loss of out of pocket expenses incurred to mitigate his damages, inconvenience, humiliation, loss of enjoyment of life, loss of future career advancement, and statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment, and award Plaintiff all relief as allowed by law, including, but not limited to the following:

1. Economic damages in the form of back pay, liquidated back benefits, and lost retirement benefits as established at trial;

2. Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary losses, pain and suffering, emotional distress, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

3. Special damages in an amount to be determined at trial;

4. Attorney's fees and costs;

5. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

6. A declaratory judgment that the conduct complained of herein is unlawful;

7. Other costs Plaintiff has incurred as a result of the conduct of the Defendants; and

8. Such further relief as justice requires and law allows, or as this Court deems just and proper.

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

Respectfully submitted this 31st day of January, 2024.

LEVENTHAL LEWIS
Kuhn Taylor Swan PC

*/s/ Casey Leier*
Casey Leier, #45155
Ptarmigan at Cherry Creek
3773 Cherry Creek N. Dr., Ste. 710
Denver, CO 80209
Phone: (720) 699-3000, x107
Fax: (866) 515-8628
Email:  cleier@ll.law

*ATTORNEY FOR PLAINTIFF*

Plaintiff Address:

Gilbert Garcia
1366 W Camino Pablo Dr.
Pueblo, CO, 81007